## JAY, Ex'r, *vs.* MOSELY.

[APPLICATION BY LEGATEES TO CHARGE EXECUTOR WITH LEGACIES.]

1. *Legacies; proof held insufficient to charge executor with.*—On an application by legatees to charge an executor with legacies, the question being whether certain money directed by the will to be retained for a contingent liability, the balance of which was the subject of the legacies, was left by the testator at his death, and received by the executor,—*Held,* evidence that the testator had such money at the date of his will, in 1861, and of declarations made by the executor soon after the testator's death, in 1866, that the money was left for the purposes mentioned, or that there was such money to be so distributed, which declarations might be referred to the provisions of the will, with as much propriety as to the executor's receipt of the fund,—is not sufficient to authorize a decree against the executor, when opposed by the direct and positive testimony of the executor and several other witnesses, that they were well acquainted with the testator and his property between the date of the will and his death ; that he had no such property within their knowledge, though, possibly, he might have had money ; and proof that he had loaned money during the time, and sustained heavy losses, and that he did not return such money in his tax list.

APPEAL from Probate Court of Conecuh.
Tried before Hon. A. W. JONES.

The facts are sufficiently stated in the opinion.

HERBERT & BUELL, and P. D. PAGE, for appellant.
S. J. CUMMING, *contra.*

B. F. SAFFOLD, J.—The decree was rendered against the appellant, Jay, as the executor of the will of his father, David Jay, on an application for the payment of legacies, made by the appellees.

The will directed that, after the payment of the debts, four thousand dollars of the estate should be retained by the executor, to await the termination of a suit respecting some land, the title to which the testator had warranted.

Whatever remained of this fund after this liability was released,.was bequeathed one-half to his son Andrew, and the other to the petitioners.

The suit was compromised for something less than a thousand dollars. There is no controversy about the property reported in the inventory of the executor. But the petitioners say the testator had a sum of money amounting to four thousand dollars, supposed to have been in gold, which was in his possession at the time of his death, or was deposited by him somewhere; that the executor received this money, but has not accounted for it. The executor denies any knowledge of the money.

A summary of the testimony may be thus stated: Stallworth was intimate with the testator, and knew as much about his business as any one. He transacted his business in taking notes for money lent, and he did not think any of his large notes had been collected, or were collectible, since the war. The decedent regarded his notes taken before the war as worthless, and did not sue upon them. About the time of making his will (1861) he had as much as five thousand dollars of money on hand. He was partial·to gold, but not enough so to prevent him from lending it. Ben Dolphin, his favorite negro servant, waited upon him continually, and was with him when he died (in August, 1866). He was in the habit of bringing him his money and putting it away, locking and unlocking the bureau drawer for the purpose. The witness did not know of his having any gold after the war, unless perhaps about eighty dollars.

Joseph H. Thomas was tax assessor of Conecuh county in 1865–6, and was intimately acquainted with the decedent, and with his property. It was his habit to lend out his money closely up to the beginning of 1862. He told the witness on several occasions that he had very little money. If he had had much, the witness would have known it. He told him that all of his notes were worthless.

Ben Dolphin testified that the decedent kept his gold in a bag, and his paper money in a book, both of which he

was accustomed to carry to him when he wanted them, and to put away. He is confident that he had not more than forty dollars in gold about the close of the war.

The tax list returned by the testator on oath, in 1866, contained no more than two hundred acres of land, valued at six hundred dollars, and a buggy, valued at seventy-five dollars.

Page testified that the executor shipped some gold, a few hundred dollars, to Mobile. He did not hear him say that he had any gold belonging to the estate on hand; heard him say there was four thousand dollars in gold set apart for the law-suit, but was inclined to think he referred to what the will said on the subject.

Mrs. Williamson, the sister of the executor, testified that he told her there was four thousand dollars in gold to be divided between himself and her children. Her husband, John A. Williamson, corroborates her statement, except that the executor prefaced his declaration with the words, "I have not told you any thing about our father's will." The conversation occurred in November, 1866. There was no further evidence tending to show that the executor had received any more gold or other property than he reported. He testified that he knew nothing of any more gold or other property than he had accouted for.

The evidence was wholly insufficient to authorize the charge against the executor.

The decree is reversed, and the cause remanded.